UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00019-RJC-DCK

| | |
|---|---|
| SUSAN K. CARPENTER, on behalf of itself and all others similarly situated trustee for H. Joe King, Jr. Revocable Trust,<br><br>Plaintiff,<br><br>v.<br><br>NEXTLEVEL ASSOCIATION SOLUTIONS, INC. and WILLIAM DOUGLAS MANAGEMENT, INC.,<br><br>Defendants. | <u>Order</u> |

**THIS MATTER** comes before the Court on Defendant Nextlevel Association Solutions, Inc. d/b/a HomeWiseDocs.com's ("HomeWise") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 45) and Defendant William Douglas Management, Inc.'s ("William Douglas") Motion to Dismiss Amended Complaint (together, the "Motions") (Doc. No. 47). For the reasons stated herein, the Motions are **GRANTED**.

I. **BACKGROUND**

A. **Factual Background**

According to the Amended Complaint, Plaintiff is the trustee of the H. Joe King, Jr. Revocable Trust, and acted in her capacity as the trustee in the events related to this case. (Doc. No. 1-3 ¶¶ 10-11). Defendant William Douglas is a property management firm, that offers property management services to home owners associations ("HOAs") and condo owners associations ("COAs") (collectively, "OAs"). (*Id.* ¶ 20). Defendant HomeWise provides internet-accessible software to property management companies that enables the companies to, among other things, track the collection of OA assessments. (*Id.* ¶¶ 21, 37). William Douglas utilizes

HomeWise's software for this service, but William Douglas does not pay HomeWise for its use; instead, HomeWise charges consumers directly for the services. (*Id.* ¶¶ 113-114).

Together Defendants provide statements containing any unpaid OA assessments in connection with the sale, gift, conveyance, assignment, inheritance, or other transfer of an ownership interest in real property (referred to herein as "statement(s) of unpaid assessments"). (*Id.* ¶ 43). When providing these statements, a requestor makes a request for a statement of unpaid assessments initially through HomeWise. (*Id.* ¶¶ 32, 40). Then, a William Douglas employee receives the request, determines whether the homeowner has any unpaid OA assessments, documents the amount owed or a zero balance in the HomeWise system, and sends a form document titled "Closing Letter" which is the statement of unpaid assessments. (*Id.*). The process to generate these statements requires a handful of keystrokes and approximately five minutes or less of the William Douglas employee's time. (*Id.* ¶¶ 33-35). Closing attorneys, title insurance companies, and lenders require statements of unpaid assessments; therefore, "for practical purposes" a homeowner cannot sell a home that is part of an OA without a statement of unpaid assessments. (*Id.* ¶¶ 46-50).

Defendants charge fees for these statements of unpaid assessments, invoiced to homeowners together, but as separate line items. (*Id.* ¶¶ 42, 52, 97, 100). The fees are paid as part of the real estate closing. (*Id.* ¶¶ 42, 45). The fees are charged without regard to individual circumstances, without performing an analysis regarding the actual cost to provide the statements, and the vast majority of the fees represent "pure profit" for Defendants. (*Id.* ¶¶ 53, 55-56). Neither Defendant contracts with homeowners in the managed OAs. (*Id.* ¶¶ 27, 41). Homeowners cannot negotiate with Defendants regarding the fees charged for providing the statements of unpaid assessments. (*Id.* ¶¶ 54, 99, 101).

On April 2, 2020, Plaintiff sold a home located at 1236 Archdale Drive, Unit D, Charlotte, North Carolina (the "Archdale Property). (*Id.* ¶¶ 104, 118). The Archdale Property is located in an OA that contracts with William Douglas for property management responsibilities. (*Id.* ¶ 118). When Plaintiff sold the Archdale Property, William Douglas charged her a $150 fee for a statement of unpaid assessments and other services. (*Id.* ¶¶ 119, 121). The closing attorney for the transaction reflected the fee on the closing statement for the property as "HOA Transfer Fee to William Douglas Property Management." (*Id.* ¶ 120). HomeWise also charged Plaintiff a $25 fee for preparation of the statement of unpaid assessments and other services. (*Id.* ¶¶ 120-121).

The next day, on April 3, 2020, Plaintiff sold a home located at 8917 Hunter Ridge Drive, Charlotte, North Carolina (the "Hunter Ridge Property"). (*Id.* ¶¶ 104, 107). The Hunter Ridge Property is located in an OA that contracts with William Douglas for property management responsibilities. (*Id.* ¶¶ 105-106). When Plaintiff sold the Hunter Ridge Property, William Douglas charged her a $215 fee, comprised of a $150 "Closing Letter and Documents Package (Includes Transfer Fee)" fee, a $40 "rush fee," and a $25 "Closing Letter Update" fee. (*Id.* ¶109). Additionally, HomeWise charged Plaintiff a $40 "Closing Letter and Documents Package (Includes Transfer Fee)" fee. (*Id.* ¶ 110). Therefore, in total the Defendants charged Plaintiff $255 for providing the initial Closing Letter and Documents Package and an updated Closing Letter and Documents Package to reconfirm that Plaintiff was current on her assessment payments when the closing of the Hunter Ridge Property was delayed by two weeks. (*Id.* ¶¶ 112, 116-117).

**B. Procedural Background**

On June 23, 2020, Plaintiff filed a class action Complaint in the Superior Court of Mecklenburg County against Defendant William Douglas, and soon after, she filed a class action Amended Complaint adding HomeWise as a Defendant. (Doc. No. 1; Doc. No. 1-3). Thereafter,

3

on January 13, 2021, HomeWise removed the action to this Court pursuant to 28 U.S.C. § 1332(d). (Doc. No. 1). The Amended Complaint brings the following individual and class claims against Defendants: (1) violation of N.C. Gen. Stat. § 39A-1, *et seq.* (the "North Carolina Transfer Fee Covenant Prohibition Act"); (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (the "UDTPA"); (3) negligent misrepresentation; (4) violation of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 *et seq.* (the "NCDCA"); (5) unjust enrichment; (6) declaratory judgment; and (7) civil conspiracy. (Doc. No. 1-3).

After the action was removed to this Court, Defendants each filed a motion to dismiss and Plaintiff filed a motion to remand the case to state court. (Doc. No. 13; Doc. No. 15; Doc. No. 19). The Court denied Plaintiff's motion to remand, denied Defendants' motions to dismiss without prejudice, and stayed the action pending a ruling by the North Carolina Court of Appeals in *Joseph Fleming et al v. Cedar Management Group, LLC*, because the *Fleming* case would "likely have a direct impact on this case." (Doc. No. 38; Doc. No. 39). The Court lifted the stay after the North Carolina Court of Appeals issued its decision in *Fleming*. Thereafter, Defendants filed the Motions to Dismiss. (Doc. No. 45; Doc. No. 47).

## II. STANDARD OF REVIEW

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief

4

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

**III. DISCUSSION**

**A. North Carolina Transfer Fee Covenant Prohibition Act Claim**

The North Carolina Transfer Fee Covenant Prohibition Act declares that North Carolina's public policy "favors the marketability of real property and the transferability of interests in real property free from title defects, unreasonable restraints on alienation, and covenants or servitudes that do not touch and concern the property." N.C. Gen. Stat. § 39A-1. "A transfer fee covenant

5

violates this public policy by impairing the marketability of title to the affected real property and constitutes an unreasonable restraint on alienation and transferability of property, regardless of the duration of the covenant or the amount of the transfer fee set forth in the covenant." *Id.* In accordance with this public policy:

> [a]ny transfer fee covenant or any lien that is filed to enforce a transfer fee covenant or purports to secure payment of a transfer fee, shall not run with the title to real property and is not binding on or enforceable at law or in equity against any subsequent owner, purchaser, or mortgagee of any interest in real property as an equitable servitude or otherwise.

N.C. Gen. Stat. § 39A-3(a). A "transfer fee covenant" is defined as "a declaration or covenant purporting to affect real property that requires or purports to require the payment of a transfer fee to the declarant or other person specified in the declaration or covenant or to their successors or assigns, upon a subsequent transfer of an interest in the real property." N.C. Gen. Stat. § 39A-2(3). The statute defines a "transfer fee" as:

> a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer.

N.C. Gen. Stat. § 39A-2(2). Specifically excluded from the definition of transfer fees are "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments . . . ." N.C. Gen. Stat. § 39A-2(2)(h). The statute allows for damages, including the amount of any transfer fee paid, attorney fees, expenses, and costs to "[a] person who records a transfer fee covenant, files a lien that purports to secure payment of a transfer fee, or enters into an agreement imposing a private transfer fee obligation." N.C. Gen. Stat. § 39A-3(b).

Defendants argue Plaintiff's claim for violation of the North Carolina Transfer Fee Covenant Prohibition Act should be dismissed because (1) the statute prohibits transfer fee covenants, not transfer fees; (2) the fees charged in this case are not transfer fees within the

6

meaning of the statute; and (3) the transfer fees Defendants charged here are presumptively reasonable. For purposes of the Motions, the Court need only address the second issue, whether the fees here were "transfer fees" as defined by the statute. Whether the fees Defendants charged were transfer fees under the statute is a matter of statutory interpretation. "Statutory interpretation properly begins with an examination of the plain words of a statute. When a statute is clear and unambiguous, the Court will give effect to the plain meaning of the words without resorting to judicial construction." *Broad St. Clinic Found. v. Weeks*, 848 S.E.2d 224, 229 (N.C. Ct. App. 2020).

The statute defines a "transfer fee" as a fee or charge (1) "payable upon the transfer of an interest in real property," or (2) "payable for the right to make or accept such transfer." N.C. Gen. Stat. § 39A-2(2). "Payable" is a sum of money that "is to be paid." Payable, *Black's Law Dictionary* (11th ed. 2019). "An amount may be payable without being due." *Id.* Due is defined as "immediately enforceable." Due, *Black's Law Dictionary* (11th ed. 2019). Thus, under the plain language of the statute, payable describes the fee or charge, and the fee or charge is "payable" when it gains the attribute that it is "to be paid." Thus, the time at which the fee or charge is actually due or paid is not relevant to when the fee or charge is payable. Here, the fees gained the attribute of "to be paid" upon the preparation of the statements of unpaid assessments, not upon the transfer of real property. Indeed, the documents attached to the Amended Complaint show that an amount of money was owed to the Defendants for preparing the statements before closing. In other words, the documents attached to Plaintiff's Complaint demonstrate that the fees became a sum of money to be paid, or "payable," when the statements were prepared, before the properties were transferred. While Plaintiff ultimately paid the fees at closing, that is not relevant to when the fees became "payable." Certainly, Defendants could have required Plaintiff to pay the fees

7

prior to closing because the fees were payable before the transfer of real property. Therefore, under the plain language of the statute, the fees at issue were payable at the time Defendants prepared the statements of unpaid assessments, not "upon the transfer of real property." Similarly, the fees here were not "payable for the right to make or accept such transfer." Instead, as noted, the fees were to be paid for Defendants' preparation of the statements of unpaid assessments. The fact that certain third parties in some real estate transactions, such as lenders and closing attorneys, might require these statements does not make the fee for such statement payable "upon the transfer of real property" or "for the right to make or accept such transfer."

This conclusion is consistent with a similar recent unpublished opinion from the North Carolina Court of Appeals on this issue of first impression, *Fleming v. Cedar Management Group, LLC*, 866 S.E.2d 919 (N.C. Ct. App. 2022) (table). In *Fleming*, in connection with plaintiffs' sale of their home, their HOA provided a statement of unpaid assessments certifying that plaintiffs were current on HOA dues. *Fleming v. Cedar Management Group, LLC*, 866 S.E.2d 919 (N.C. Ct. App. 2022) (table). The HOA charged the plaintiffs a $395 certification fee "due and payable" to the HOA's property management company. *Id.* Thereafter, the plaintiffs brought a class action suit against the property management company asserting a claim for violation of the North Carolina Transfer Fee Covenant Prohibition Act. In affirming the superior court's dismissal of the plaintiffs' complaint, the North Carolina Court of Appeals concluded that the $395 certification fee was not a "transfer fee" under the statutory definition. *Id.* It reasoned that the fee charged to plaintiffs was payable on the preparation of the statement of unpaid assessments, not "payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer." *Id.* (quoting N.C. Gen. Stat. § 39A-2(2)). The court rejected plaintiffs' argument that a statement of unpaid assessments "is often a prerequisite to obtaining title insurance of financing

8

the purchase of real estate" because neither of those instances "constitutes the transfer of an interest in real property." *Id.*

While *Fleming* is not binding on this Court, it does provide some predictive value for the Court's application of North Carolina law.[1] However, Plaintiff argues the Court should reach a different conclusion than the *Fleming* court. First, Plaintiff argues the fees were payable upon the transfer of real property because the fees were paid at closing and the statements indicated the fees were paid at closing. However, as noted, when the fees were due or ultimately paid is not relevant to when the fees gained the attribute of being "payable." And the statements attached to the Amended Complaint demonstrate that the fees became "payable," or a sum of money to be paid, when Defendants prepared the statements of unpaid assessments, not upon the transfer of the real property. Second, Plaintiff argues interpreting "transfer fees" as the court did in *Fleming* would render N.C. Gen. Stat. § 39A-2(2)(h), the provision excepting reasonable fees charged for the preparation of statements of unpaid assessments from the definition of transfer fees, as mere surplusage. However, the Court must consider the plain language of the statute, and this argument puts "the cart before the horse" by raising exceptions before demonstrating the fees were "transfer fees" at all under the plain language of the statute. *Id.*

Next, Plaintiff argues this interpretation ignores a published North Carolina Court of Appeals decision, *Wilner v. Cedars of Chapel Hill, LLC*, 773 S.E.2d 333 (2015). In *Wilner*, the

---

[1] A federal court applying state law "is not free to reject [a] state rule merely because it has not received the sanction of the highest state court." *C.F. Trust, Inc. v. First Flight Ltd.*, 306 F.3d 126, 137 (4th Cir. 2002) (alterations in original). "Rather, when an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quotation marks omitted). If an intermediate court's opinion is unpublished, such status "limits, but [does] not eliminate, its predictive value." *Id.*

court considered, among other things, membership fees for a continuing care retirement community calculated as ten percent of the gross purchase price paid at closing. In considering whether the membership fees were "transfer fees," the court found the membership fees were excepted from the prohibitions in the North Carolina Transfer Fee Covenant Prohibition Act by another statute related specifically to continuing care retirement communities. The Plaintiff hangs her hat on a line in which the court stated, "those fees are not barred by the provisions of Chapter 39A, even though they might otherwise be considered transfer fees." However, the court did not analyze or otherwise conclude the membership fees were in fact transfer fees, and instead found another statute completely excepted the need to definitively determine whether the membership fees were transfer fees.[2] Finally, Plaintiff argues the Amended Complaint is distinct from the complaint in *Fleming* because it alleges that fees were payable upon transfer of real property. However, Plaintiff's conclusory allegations are insufficient to overcome the Motions.[3] Thus, the Court is not persuaded by Plaintiff's arguments to interpret the statute differently than the *Fleming* court.[4] And, in any event, as discussed above, the reasoning in *Fleming* is consistent with the Court's interpretation of the statute.

Accordingly, the fees here are not "transfer fees" as defined by the North Carolina Transfer

---

[2] The membership fees in *Wilner* are also materially different from the fees at issue in this case. In *Wilner*, residents that purchased an individual unit in the community were required to pay the membership fees "calculated as ten percent of the gross purchase price of a housing unit" and "paid at closing as part of the purchase price." *Wilner*, 773 S.E.2d at 390-91.

[3] Plaintiff also argues that Defendants admitted they charged transfer fees by the description of the fee in a letter pre-litigation and ambiguous discovery admissions. This argument is unpersuasive and the issue is a legal question for the Court to decide.

[4] Since *Fleming*, in a factually similar case, *Dernoshek v. FirstService Residential, Inc.*, at summary judgment, the court concluded "the fee charged for these statements is not a transfer fee, so there is no Chapter 39A claim." *Dernoshek v. FirstService Residential, Inc.*, Case No. 1:21-cv-00056-CCE-JLW (M.D.N.C. Sept. 23, 2022) (Eagles, J.). While the *Dernoshek* court did not analyze this issue in depth, in briefing the defendants in *Dernoshek*, like here, relied heavily on the reasoning in *Fleming* for this argument.

Fee Covenant Prohibition Act, and Plaintiff's claim is dismissed.

### B. North Carolina Unfair and Deceptive Trade Practices Act

In North Carolina, to state a claim for violation of the UDTPA, "a plaintiff must show: (i) that the defendant engaged in an unfair or deceptive act or practice; (ii) the act or practice was in or affecting commerce; and (iii) the act proximately caused injury to the plaintiff." *Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 685 (W.D.N.C. 2015). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and a "practice is deceptive if it has the capacity or tendency to deceive." *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013). Whether a commercial act or practice is unfair or deceptive is a question of law. *Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998).

Plaintiff alleges Defendants acts or practices were unfair or deceptive because they charged unreasonable fees for the statements of unpaid assessments, "under penalty of a cancelled or delayed closing," and as a result Plaintiff made "gross overpayment for services rendered by Defendants." (Doc. No. 1-3 ¶¶ 160-165). She alleges the fees were unreasonable for various reasons including, that the fees were excessive, the fees bore no relation to the actual cost of providing the statements, Defendants had no legal basis to claim Plaintiff owed the fees, Defendants both charged Plaintiff a fee for the statements, and that the fees were used to fund post-sale services that exclusively benefitted the buyer.

As an initial matter, Plaintiff's reliance on the North Carolina Transfer Fee Covenant Prohibition Act to support her UDTPA claim fails since the Court concludes the fees are not "transfer fees" under the statute. Next, in North Carolina excessive fees alone do not support a UDTPA claim. *Bumpers*, 747 S.E.2d at 228-29. Particularly here, where the fees are less than

11

those in *Fleming* where the court dismissed the UDTPA claim on an excessive fee theory, and where the fees are within the reasonableness range set by the recently amended North Carolina statute. Next, Plaintiff's Complaint does not sufficiently allege how the remaining acts or practices were unfair or deceptive. Plaintiff alleges it was unfair or deceptive for each Defendant to charge Plaintiff a fee for the statements; however, each Defendant provided a different service or value to Plaintiff in order to obtain the statements. Further, it is not clear why it was unfair or deceptive for the Defendants to use the fees or profits to provide benefit to the buyer, except to assert that the fees were excessive and resulted in too much profit to Defendants. In addition, Plaintiff's alleged injury, that she made "gross overpayment for services rendered by Defendants" supports the conclusion that the claim is really one based on excessive fees. Therefore, Plaintiff's Amended Complaint fails to state a claim for violation of the UDTPA. *Fleming*, 866 S.E.2d 919 (dismissing North Carolina UDTPA claim based on allegations of unreasonable fees for statements of unpaid assessments).

**C. Remaining Claims**

Plaintiff's remaining claims rest on her theory that the North Carolina Transfer Fee Covenant Prohibition Act prohibited the fees Defendants charged for preparing the statements of unpaid assessments, or that the fees were otherwise unlawful. First, Plaintiff's negligent misrepresentation claim alleges Defendants made material misrepresentations to Plaintiff in closing documents that the fees charged for preparation of the statements of unpaid assessments were lawfully owed and due. Next, Plaintiff alleges Defendants violated the NCDCA by assessing and collecting fees for statements of unpaid assessments without a legal justification. Additionally, Plaintiff's unjust enrichment claim alleges it was unjust for Defendants to retain the alleged transfer fees. Plaintiff's declaratory judgment claim is also based on her theory that Defendants

violated the North Carolina Transfer Fee Covenant Prohibition Act. However, Plaintiff's Complaint does not demonstrate that the fees were not actually lawfully owed and due. *Fleming*, 866 S.E.2d 919 (dismissing negligent misrepresentation, NCDCA, and declaratory judgment claims). Finally, a civil conspiracy claim fails when the underlying tort claims are dismissed. *Williams v. United Cmty. Bank*, 724 S.E.2d 543, 551 (N.C. Ct. App. 2012). For these reasons, Plaintiff's remaining claims are dismissed.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Nextlevel Association Solutions, Inc. d/b/a HomeWiseDocs.com's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 45) is **GRANTED**; and

2. Defendant William Douglas Management, Inc.'s Motion to Dismiss Amended Complaint (Doc. No. 47) is **GRANTED**.

The Clerk of Court is directed to close this case.

Signed: September 29, 2022

Robert J. Conrad, Jr.
United States District Judge

13

Case 3:21-cv-00019-RJC-DCK   Document 53   Filed 09/29/22   Page 13 of 13